# IN THE COURT OF APPEALS OF IOWA

No. 23-0257
Filed July 3, 2024

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**JERRY LEE GUY JR.,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling, Judge.

　　　　The defendant appeals his conviction for lascivious acts with a child. **AFFIRMED.**

　　　　Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

　　　　Brenna Bird, Attorney General, and Thomas J. Ogden (until withdrawal) and Katherine Wenman, Assistant Attorneys General, for appellee.

　　　　Considered by Badding, P.J., Chicchelly, J., and Potterfield, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

A jury found Jerry Guy Jr. guilty of lascivious acts with a child pursuant to Iowa Code section 709.8(1)(d) (2022) (soliciting a child to engage in a sex act). Guy appeals, raising evidentiary challenges and arguing there is insufficient evidence to support his conviction.

**I. Background Facts and Proceedings.**

Guy was charged by trial information with committing lascivious acts with thirteen-year-old N.B. between March 1 and March 31, 2022, by way of soliciting the child to engage in a sex act with him.[1] Guy pled not guilty, and his case was tried to a jury over six days in October 2022.

At trial, N.B. testified that Guy began dating her mother when N.B. was a young child; although they were no longer in a romantic relationship in early 2022, Guy and N.B.'s mother, Rachel, lived together in a home they were fixing up. N.B. lived across the street in her grandmother's home; she continued to think of Guy as a father figure and had him saved in her phone contacts as "Dad <3." Rachel, Guy, and N.B. often smoked marijuana together, with Rachel or Guy providing the drugs. At other times, while Rachel was working second shift, N.B. and Guy would spend time together smoking marijuana without Rachel.

N.B. testified about a time when she was with her fifteen-year-old boyfriend, M.S. N.B. and M.S. decided they wanted to smoke marijuana, and they hoped to get it from Guy. While Rachel was at work, N.B. and M.S. went to Guy's home.

---

[1] Guy was also charged with one count of sexual abuse in the third degree and a second count of lascivious acts with a child, a class "C" felony. The jury acquitted Guy of these counts, and they are not at issue on appeal.

While the three of them were in the same room, Guy began texting N.B.; he would send a message and then physically motion to her to check her phone. M.S. testified to witnessing the interaction—which he testified occurred in March 2022—and finding the atmosphere tense. Over Guy's objections, screenshots of text messages stating the following were entered into evidence:

> DAD <3: If you thought about it and played your cards right you could get smoked up now and some other times too lhh[2] but……
> N.B: Just this once then I'll get off you ass cause idfk[3]
> DAD <3: You not on my ass
> DAD <3: And don't cuss.
> DAD <3: Lol
> DAD <3: And what I want is one of the 2 rules goofy not my fault you broke.. lol what time does [M.S.] go home you got time to think lol
> DAD <3: Bongs clean and ready too lhh
> N.B.: At 8 but still
> DAD <3: Naw it was matching or fucking was my 2 rules silly I was just asking what time so I knew goofy
> N.B.: Lol
> N.B.: So we finna wait to smoke or we doing it now
> N.B.: If we even can lol
> DAD <3: Wym[4]
> DAD <3: You figured it out?
> N.B.: I mean so but still idk[5] and i won't know cause i don't know what i want Ive been telling you the same thing for the past like hour
> N.B.: *no
> DAD <3: I want one rule or the other and this shit some fire ass weed called bio chem lol and I've been saying for ;ikr the last hour lhh ma you so goofy I swear
> N.B.: And wdym by matching?
> DAD <3: Matching is throwing down weed or money
> DAD <3: Fronts is when people want something now but can't contribute til days or weeks later I don't front cause people never pay or take forever to lbvs[6]

---

[2] Multiple witnesses testified they understood "lhh" to mean "laughing hella hard."
[3] There was testimony this could mean either "I don't fucking know" or "I don't fucking care."
[4] "Wym" means "What do you mean?"
[5] "idk" stands for "I don't know."
[6] "lbvs" or "laughing but very serious."

DAD <3: You gonna figure it out after he goes home before mom gets off?  I'll smoke now if so
DAD <3: So you got me after he goes home?
N.B.: Wait hold up got u with what.  What am I doing when he goes home
DAD <3: Omg guess not

N.B. testified that she wanted to leave after receiving Guy's messages but was concerned how he would react; she began sending text messages to M.S., while he was also present in the room.  M.S. came up with a plan for them to leave, and the two of them returned to the grandmother's home.

According to M.S.'s testimony, while he watched Guy and N.B. send messages back and forth, "it just seemed very off."  And then he received a message from N.B. stating Guy was going to touch her so they needed to leave. M.S. understood that N.B. meant Guy wanted to touch her sexually; he helped come up with an excuse why they needed to leave and then walked with her back to her grandmother's home.  As they were leaving, M.S. thought Guy "seemed frightened or worried that he got caught or something."  M.S. contacted Rachel, who was at work, telling her that Guy was trying to touch N.B. in a sexual manner.

According to Rachel, she came home and asked N.B. what was happening. Rather than using her own words, N.B. asked to just read her mother the text messages.  After that, Rachel asked N.B. to send her screenshots of the messages (which Rachel later provided to police officers).  Rachel testified that Guy also contacted her at her work that night, saying he needed to talk to her about N.B. When she spoke to him (after talking to N.B.), Guy reported that N.B. offered him sexual favors after she asked him for weed and he told her no; he stated this took place over some messaging platform.  When Rachel asked Guy to send her

screenshots of the messages, "[h]e unlocked his phone and said something along the lines of, 'Oh, my God. What happened? You're not gonna believe this, but all of my messages are deleted.'"

When detectives interviewed Guy in mid-April, without them showing him the screenshots Rachel provided from N.B.'s phone, Guy knew the messages they were referencing. He acknowledged sending messages to N.B. about supplying her with marijuana and the idea of "matching or fucking"; he told the detectives he sent the messages to show Rachel the extremes N.B. was willing to go to get marijuana.

The jury found Guy guilty of the class "D" felony of lascivious acts with a child. He was later sentenced to five years in prison. Guy appeals.

## II. Discussion.

### A. Evidentiary Challenges.

Guy challenges the admission of exhibits 1A–1D—the screenshots the State argued showed messages Guy sent to N.B. He argues that the exhibits were not properly authenticated pursuant to Iowa Rule of Evidence 5.901 and contain inadmissible hearsay. "We review evidentiary rulings for an abuse of discretion." *State v. Fontenot*, 958 N.W.2d 549, 555 (Iowa 2021). "However, the standard of review for hearsay is for errors at law." *Id.*

**Authentication.** We start with Guy's challenge under rule 5.901. *See State v. Groat*, No. 19-1809, 2021 WL 1016593, at *5 (Iowa Ct. App. Mar. 17, 2021) (recognizing authentication is a "condition precedent to admissibility" of an exhibit (citation omitted)).

"[T]he proponent [of the exhibit] must produce evidence sufficient to support a finding that the item is what the proponent claims it is" in order "[t]o satisfy the requirement of authenticating or identifying [the] item of evidence."  Iowa R. Evid. 5.901(a).  That requirement may be satisfied by "[t]estimony that an item is what it is claimed to be."  Iowa R. Evid. 5.901(b)(1).  Of course, the testifying witness must have "personal knowledge of the matter."  Iowa R. Evid. 5.602.  "[T]he burden to authenticate is not high—only a prima facie showing is required, and a district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which a jury could reasonable find that the evidence is authentic."  *State v. Goodwin*, No. 18-1822, 2020 WL 1551149, at *4 (Iowa Ct. App. Apr. 1, 2020) (cleaned up) (relying on and quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).

Guy complains that N.B.'s testimony was not enough to authenticate that the messages contained in the four screenshot exhibits were sent from him.  He points to the fact that, when the police completed an extraction of the information on his phone, there was no corroborating evidence to show any such text messages came from his phone number.

N.B. testified that she had Guy saved in her contacts as "Dad <3" and explained how she was sitting in the same room as Guy as he sent messages and then would physically indicate to her that she should check her phone.  According to Rachel, N.B. read her the messages from her phone the night she received them—after M.S. called Rachel to come home from work—and then provided her with the screenshots of the messages, which Rachel later provided to the police.  Rachel testified exhibits 1A–1D were those screenshots.  We recognize that to

admit social media evidence, particularly where the exhibit is a printout or screenshot, "two levels of authentication may be necessary: (1) authentication of the communication or underlying content that existed originally in digital form and (2) authentication of the physical download or printout of that content." 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.901:11 (Oct. 2023 update) [hereinafter Doré, at § 5.901:11]. N.B.'s testimony that she received the messages from a number she knew to belong to Guy, while she sat in the same room as him and witnessed him sending messages, combined with Rachel's testimony identifying the screenshots as what she received from N.B. and provided to the police, meets the authentication requirements of rule 5.901. *See State v. Simpson*, No. 18-0666, 2020 WL 4812647, at *2 (Iowa Ct. App. Aug. 19, 2020) ("Evidence that an electronic writing is what the proponent claims it is requires 'evidence sufficient to show that the purported author of the communication, whether it be an email, a Facebook posting, or a text message, actually authored or published the content.' 'Authenticating circumstances can include the context of an e-mail.'" (quoting Doré, at § 5.901:11)).

That is not to say the jury was required to believe N.B.'s testimony about Guy sending the messages—but that is a question regarding the appropriate weight to give N.B.'s testimony, not the admissibility of the exhibit. *See R.M. v. D.S.*, No. 20-1375, 2021 WL 4592262, at *8 (Iowa Ct. App. Oct. 6, 2021) ("Any weakness of the exhibit in establishing D.S. was the sender went to its weight and not to its admissibility."). The district court did not abuse its discretion in concluding the exhibits were properly authenticated.

**Hearsay.** On appeal, Guy also challenges the exhibits on hearsay grounds, suggesting that because the State failed to establish he was the sender of the messages, the exhibits could not be admitted under the theory they contained the non-hearsay of an opposing party's statements. *See* Iowa R. Evid. 5.801(d)(2)(A). But Guy only raised the issue of hearsay in his motion in limine, in which he made a general request to exclude "[h]earsay from any source, including nonverbal statements which constitute hearsay." Guy did not request or obtain a limine ruling as to hearsay on these specific exhibits, and he did not make a contemporaneous objection at the time the exhibits were offered. We conclude he failed to preserve error on this claim. *See Wailes v. Hy-Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014) ("Generally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused. Thus, 'error claimed in a court's ruling on a motion in limine is waived unless' the error is preserved at trial when the evidence is offered." (citation omitted)). We reach this conclusion even though the State does not challenge error preservation. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). We do not consider this issue further.

**B. Sufficiency of the Evidence.**

Guy challenges the sufficiency of the evidence supporting his conviction. Here, the State had the burden to prove:

1. On or about March 1, 2022 through March 31, 2022, [Guy] solicited N.B. to engage in any sex act.
2. [Guy] did so with the specific intent to arouse or satisfy the sexual desires of [himself] or N.B.
3. [Guy] was then [eighteen] years of age or older.
4. N.B. was under the age of [fourteen] years.

Guy challenges the State's proof as to both the first and second element.

[We] review[] challenges to the sufficiency of the evidence for the correction of legal error. Under this standard, [we are] highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence. Evidence is substantial when the quantum and quality of evidence is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." In conducting substantial-evidence review, [we] consider[] the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding."

*State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (internal citations omitted).

Regarding the first element, Guy challenges that the State proved any act of solicitation occurred within the dates alleged—sometime in March 2022. *See State v. Coon*, No. 21-0768, 2022 WL 946985, at *1 (Iowa Ct. App. Mar. 30, 2022) (distinguishing between the inclusion of date ranges, which "may be elements of the crime[]" and the use of the phrase "on or about" which indicates the listed date is an approximation). He focuses on N.B.'s inability to provide a date and the fact that the messages in exhibits 1A–1D did not show a date.

While N.B. was unable to provide a date, M.S. testified that the incident took place sometime in March. We recognize he first testified it happened in May, but he later stated it occurred in March. And he provided other details why it could not have occurred in May, including that N.B. and M.S. broke up in April, at which point

they blocked each other on social media and stopped having contact. Additionally, Rachel testified it happened in March; she was interviewed by detectives on April 13 and testified about intentionally giving N.B. some time before reporting the incident. And Detective Adam Raisbeck testified that when he initially spoke to Rachel in April 2022, she told him the messages were sent to N.B. in March. There is substantial evidence supporting the date element.

As for the second element, Guy challenges the State's proof that he sent the messages with the specific intent to arouse or satisfy sexual desires. He suggests both that the State failed to prove he was the sender and that, based on the sender's repeated use of "lol" and "goofy" in them, the messages were not serious.[7]

There is substantial evidence Guy sent the messages. N.B. and M.S. both testified about sitting in the room with Guy while he would type on his phone and then motion to N.B. to check hers. N.B. explained that "Dad <3" was the contact name she used for Guy. And, while not adopting the specific messages in

---

[7] Guy also argues that, because "[t]he parties were clearly all high and under the influence at the time of the messages," we should consider whether intoxication negated his ability to form specific intent. But Guy did not give notice he intended to rely on the affirmative defense of intoxication. *See* Iowa R. Crim. P. 2.11(11)(c) ("If defendant intends to rely upon the defense of intoxication by drugs or alcohol, . . . , the defendant shall, within the time for filing pretrial motions, file written notice of intention."). And he did not ask the jury to be instructed on the intoxication defense. *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) ("[O]bjections to giving or failing to give jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case."). We do not consider this argument further. *See, e.g.*, *State v. Starr*, No. 22-0277, 2023 WL 5092065, at *2 (Iowa Ct. App. Aug. 9, 2023).

exhibits 1A–1D, Guy admitted to the police detectives that he sent N.B. messages about providing her with marijuana and that she would need to "match or fuck."

Through the testimony of Rachel and Detective Raisbeck, the jury heard Guy's stated reason for sending N.B. messages about "fucking" in exchange for marijuana—his purpose was to show the extremes she would go to obtain the drug rather than expressing a sincere intent to engage in sex acts with her. But the jury could reject Guy's self-serving explanation and instead accept the messages at face value. *See State v. Arne*, 579 N.W.2d 326, 328 (Iowa 1998) (recognizing the jury "was acting within its province in rejecting [the defendant's] self-serving" statements). Especially in light of M.S.'s testimony that, as he and N.B. left after Guy sent the text messages, Guy "seemed frightened or worried that he got caught or something." Substantial evidence supports the jury's finding that Guy sent N.B. the text messages with the specific intent to arouse or satisfy sexual desires.

Because the district court did not abuse its discretion in admitting exhibits 1A–1D and substantial evidence supports Guy's conviction, we affirm.

**AFFIRMED.**